IN THE UNITED STATES DISTRICT COURT FOR THE
MIDDLE DISTRICT OF TENNESSEE
NASHVILLE DIVISION

| | |
|---|---|
| JERRY LEE SETZER, | ) |
| Plaintiff, | ) |
| v. | ) NO. 3:24-cv-01497 |
| BONE AND JOINT INSTITUTE, et al., | ) JUDGE RICHARDSON |
| Defendants. | ) |

## MEMORANDUM OPINION AND ORDER

Jerry Lee Setzer, a pretrial detainee confined at the Williamson County Jail, filed a pro se civil rights Complaint under 42 U.S.C. § 1983 (Doc. No. 1) and an application for leave to proceed in forma pauperis (IFP). (Doc. No. 2). Plaintiff later filed a Certificate of Prisoner Trust Fund Account Activity (Doc. No. 8) in support of his IFP application.

This case is before the Court for ruling on Plaintiff's IFP application and for initial review of the Complaint under the Prison Litigation Reform Act (PLRA), 28 U.S.C. § 1915A.

## PAUPER STATUS

A prisoner bringing a civil action may be permitted to proceed as a pauper, without prepaying the filing fee. 28 U.S.C. § 1915(a). Because it appears from Plaintiff's submissions that he lacks the funds to pay the entire filing fee, his IFP application (Doc. No. 2) is **GRANTED** and a $350 filing fee is **ASSESSED**.[1] The fee will be collected in installments as described below.

---

[1] Prisoners bringing civil lawsuits or appeals are "required to pay the full amount of a filing fee," 28 U.S.C. § 1915(b)(1), either in a lump sum at the time of filing or in installments over time via an assessment against the prisoner's inmate trust account. Where the prisoner is granted pauper status and allowed to pay in installments, the fee is $350. See 28 U.S.C. § 1914(a)–(b) & Dist. Ct. Misc. Fee Schedule, provision 14 (eff. Dec. 1, 2023).

The warden of the facility in which Plaintiff is currently housed, as custodian of his trust account, is **DIRECTED** to submit to the Clerk of Court, as an initial payment, the greater of: (a) 20% of the average monthly deposits to Plaintiff's credit at the jail; or (b) 20% of the average monthly balance to Plaintiff's credit for the six-month period immediately preceding the filing of the Complaint. 28 U.S.C. § 1915(b)(1). Thereafter, the custodian shall submit 20% of Plaintiff's preceding monthly income (or income credited to Plaintiff for the preceding month), but only when the balance in his account exceeds $10. *Id.* § 1915(b)(2). Payments shall continue until the $350 filing fee has been paid in full to the Clerk of Court. *Id.* § 1915(b)(3).

The Clerk of Court **MUST** send a copy of this Order to the warden of the facility in which Plaintiff is currently housed to ensure compliance with that portion of 28 U.S.C. § 1915 pertaining to the payment of the filing fee. If Plaintiff is transferred from his present place of confinement, the custodian must ensure that a copy of this Order follows Plaintiff to his new place of confinement, for continued compliance with the Order. All payments made pursuant to this Order must be submitted to the Clerk of Court for the United States District Court for the Middle District of Tennessee, 719 Church Street, Nashville, TN 37203.

## INITIAL REVIEW

### A. Legal Standard

In cases filed by prisoners, the Court must conduct an initial screening and dismiss the Complaint (or any portion thereof) if it is facially frivolous or malicious, if it fails to state a claim upon which relief may be granted, or if it seeks monetary relief against a defendant who is immune from such relief. 28 U.S.C. § 1915A; 42 U.S.C. § 1997e(c). Review under the same criteria is also authorized under 28 U.S.C. § 1915(e)(2) when the prisoner proceeds IFP.

To determine whether the Complaint states a claim upon which relief may be granted, the

Court assesses whether it alleges sufficient facts "to state a claim to relief that is plausible on its face," such that it would survive a motion to dismiss under Federal Rule of Civil Procedure 12(b)(6). *Hill v. Lappin*, 630 F.3d 468, 470–71 (6th Cir. 2010) (quoting *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009)). At this stage, "the Court assumes the truth of 'well-pleaded factual allegations' and 'reasonable inference[s]' therefrom," *Nat'l Rifle Ass'n of Am. v. Vullo*, 602 U.S. 175, 181 (2024) (quoting *Iqbal*, 556 U.S. at 678–79), but is "not required to accept legal conclusions or unwarranted factual inferences as true." *Inner City Contracting, LLC v. Charter Twp. of Northville, Michigan*, 87 F.4th 743, 749 (6th Cir. 2023) (citation omitted). The court must afford the pro se complaint a liberal construction, *Erickson v. Pardus*, 551 U.S. 89, 94 (2007), while viewing it in the light most favorable to the plaintiff. *Inner City*, *supra*.

Plaintiff filed the Complaint under Section 1983, which authorizes a federal action against any person who, "under color of state law, deprives [another] person of rights, privileges, or immunities secured by the Constitution or conferred by federal statute." *Wurzelbacher v. Jones-Kelley*, 675 F.3d 580, 583 (6th Cir. 2012) (citations omitted); 42 U.S.C. § 1983. The Complaint must therefore plausibly allege (1) a deprivation of a constitutional or other federal right, and (2) that the deprivation was caused by a "state actor." *Carl v. Muskegon Cnty.*, 763 F.3d 592, 595 (6th Cir. 2014).

**B. Allegations and Claims**

Plaintiff sues the Bone and Joint Institute in Franklin, Tennessee, and Dr. Ian R. Byram, M.D., an orthopedic surgeon with that practice. (Doc. No. 1 at 2.) He alleges that, after he suffered an injury to his right bicep in a fall at the Williamson County Jail, he was taken to see Dr. Byram, who "looked at [his] disfigured bicep and said that it couldn't be fixed, period." (*Id.* at 4–5.) Dr. Byram proceeded to clarify that his opinion was not based on the fact that Plaintiff was a prisoner.

(*Id.* at 5.) Plaintiff asked for an MRI (*id.*), and Dr. Byram agreed to order one after Plaintiff "talk[ed] him into" it. (*Id.* at 13.) When Plaintiff was returned to Dr. Byram to review the MRI results, Dr. Byram once again told him that the bicep "can't be fixed." (*Id.* at 5.) Plaintiff accuses Dr. Byram of lying about the irreparability of his bicep injury (*id.* at 6), when the truth of the matter is that he was refused surgery because he is a jail inmate. (*Id.* at 14.) Plaintiff states that he continues to experience a burning sensation and other symptoms at times in his right arm, and needlessly suffers disfigurement and functional loss, when Defendants "could have fixed [his] arm." (*Id.*) He asks that compensatory and punitive damages be awarded against Defendants. (*Id.* at 5.)

**C. Analysis**

This case must be dismissed because it fails plausibly to claim relief under Section 1983, which requires proof of a deprivation of federal rights caused by a "state actor." *Carl*, 763 F.3d at 595. The Complaint does not suggest, and the Court perceives no reason to believe, that either the Bone and Joint Institute or Dr. Byram is a state actors. Although a corporate provider of medical services to inmates *in a prison clinic* is considered a state actor, *see Starcher v. Corr. Med. Sys., Inc.*, 7 F. App'x 459, 465 (6th Cir. 2001), an outside, private clinic and its employees are not, absent plausible allegations that they engaged in "conduct [that] was 'fairly attributable to the state.'" *Siefert v. Hamilton Cnty.*, 951 F.3d 753, 760 (6th Cir. 2020) (quoting *Filarsky v. Delia*, 566 U.S. 377, 383 (2012)). No such allegations of involvement with the state are made here. Accordingly, Dr. Byram and the Bone and Joint Institute are not proper defendants to a suit under Section 1983.

Moreover, Plaintiff's claim—that a private physician and clinic declined to operate on him even though the results of physical examination and review of an MRI (which the physician had

to be talked into ordering) indicated the need for surgery—is, it would seem, essentially an expression of his difference of opinion with Defendants regarding the treatment that is necessary and proper for his torn bicep. And "disagreements over . . . diagnostic techniques (e.g., the need for X-rays), forms of treatment, or the need for specialists or the timing of their intervention . . . implicate medical judgments and, at worst, negligence amounting to medical malpractice," which is not cognizable under Section 1983 but is a matter of state tort law. *Randle v. Alexander*, 960 F. Supp. 2d 457, 481 (S.D.N.Y. 2013). This action will be dismissed without prejudice to Plaintiff's ability to pursue a remedy in state court under state law for the harm he alleges here.

## CONCLUSION

For the reasons given above, this action is **DISMISSED** pursuant to 28 U.S.C. §§ 1915(e)(2)(B)(ii) and 1915A(b)(1), for failure to state a claim upon which relief may be granted. The dismissal is without prejudice to Plaintiff's ability to pursue his medical treatment claim in state court under state law.

In light of this disposition, Plaintiff's pending motions for "Relief, Money and Punitive Damages" (Doc. No. 6), to Appoint Counsel (Doc. No. 7), and "to put the above in your hands" (Doc. No. 9) are **DENIED** as moot. Plaintiff's February 28, 2025 letter, docketed as a Motion to Ascertain Status (Doc. No. 10), is **GRANTED** insofar as the status of this case has been clarified in this Order.

The Court **CERTIFIES** that any appeal from this dismissal would not be taken in good faith. 28 U.S.C. § 1915(a)(3).

This is the final order in this action. The Clerk **SHALL** enter judgment. Fed. R. Civ. P. 58(b)(1).

IT IS SO ORDERED.

*Eli Richardson*
ELI RICHARDSON
UNITED STATES DISTRICT JUDGE